Case 13-02293   Filed 12/15/16   Doc 43

NOT FOR PUBLICATION

FILED

DEC 1 5 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JOSE MARTINEZ and<br>ANA GRANADOS, Debtors.<br><br>_____<br><br>J. MICHAEL HOPPER, Plaintiff<br><br>v.<br><br>JOSE MARTINEZ and<br>ANA GRANADOS, Defendants.<br>_____ | Case No. 13-21734-C-7<br><br>DCN: DNL-7, DNL-3<br><br><br><br>Adversary No. 13-02293-C |

MEMORANDUM DECISION

**Before: David E. Russell, Bankruptcy Judge**

J. Russell Cunningham, J. Luke Hendrix, Nolan, Livaich & Cunningham, Sacramento, California, for Plaintiff.

Scott A. Coben, Sacramento, California, for Defendants.

J. Michael Hopper, chapter 7 trustee, objects to the amended wildcard exemption claimed by the debtors Jose Martinez and Ana Granados. Having considered the papers, the evidentiary record, and arguments of counsel, the court overrules the trustee's objection and denies the trustee's motion for turnover based upon the following findings of fact and conclusions of law made pursuant to Federal Rule of Civil Procedure 52(a), as incorporated into Federal Rule of Bankruptcy Procedure 7052 and

applied to contested matters by Federal Rule of Bankruptcy Procedure 9014(c).

## I. BACKGROUND

The debtors Jose Martinez and Ana Granados filed a voluntary chapter 7 petition on February 8, 2013. J. Michael Hopper is the duly appointed chapter 7 trustee.

The debtors speak Spanish and very little English. (Alternate Direct Test. of Jose Martinez ("Martinez Test.") at 2, ¶ 4.) Due to financial difficulties, the debtors sought counsel at the law offices of Thomas Gillis in January of 2012. (Id. at 2, ¶ 5.) The debtors met with a paralegal who informed them that he would prepare the necessary bankruptcy paperwork and call them when it was ready to sign. (Id.)

When the debtors did not receive any phone call, they asked their daughter, who spoke English, to assist them in communicating with the office of Mr. Gillis. (Id. at 2, ¶ 4.) After the debtors' daughter went to the law offices and made numerous phone calls, the debtors were finally able to sign the bankruptcy petition and schedules in July of 2012. (Id. at 3, ¶ 10.) After even further delays, the petition was filed on February 8, 2013. (Id. at 3, ¶ 13.) The filed schedules had not been changed since they were signed seven months earlier. The debtors contend that someone from the office of Mr. Gillis used white out in an attempt to cover up the date next to each of the debtors' signatures and convert the year of the signing from 2012

to 2013.  (Id. at 4, ¶ 14.)

In their first amended schedules, the debtors scheduled their interests in a 1988 Chevy catering truck, valued in the amount of $19,500, a sole proprietorship business operated out of the catering truck identified as La Guanakita, valued in the amount of $500, and a 2004 Hummer H2, valued in the amount of $14,379.  (Docket No. 1.)  The debtors claimed the catering truck and business exempt from their bankruptcy estate under California Code of Civil Procedure section 703.140(b)(5), California's so-called "wildcard" exemption, which allows a debtor to exempt up to $25,340 in "any property."  (Docket No. 15.)

The trustee subsequently asked that the debtors either terminate or seek abandonment of the business.  (Trustee Decl., Docket No. 127 at 1, ¶ 2.)  The debtors filed a motion to abandon the catering truck and business, which the court granted on March 26, 2013.  (Docket No. 19.)

In or about March and April 2013, the trustee requested turnover of loan statements and the insurance policy for the Hummer.  (Alternate Direct Test. of J. Michael Hopper at 3, ¶ 10.)

On May 9, 2013, the debtors amended their wildcard exemption.  (Docket No. 25.)  The debtors reduced the dollar amount of the wildcard exemption applied to the catering truck and applied, for the first time, a California Code of Civil Procedure section 703.140(b)(6), "tools-of-the-trade", exemption to the catering truck.  (Id.)  The debtors used the freed-up

wildcard dollar amount to exempt a 2004 Hummer H2 in the amount of $6,269 and a 2012 federal tax refund valued at $6,000. (Id.)

The debtors had not disclosed the existence of the 2012 tax refund on their petition or subsequent amended schedules prior to May 9, 2013. The trustee later discovered that the tax return had been prepared on January 27, 2013 and that the debtors had received a refund in the amount of $6,526. (Pl's Tr. Exs. 13, 14.)

The debtors contend that they did not disclose the 2012 tax refund in their original schedules because they had prepared their original schedules in early 2012 and had filed their tax return in early 2013. (Martinez Test. at 6, ¶ 20.) In May of 2013, a representative from the office of Mr. Gillis contacted the debtors and inquired as to the amount of their 2012 tax refund. (Id.) Prior to this time, the debtors had not attended any scheduled meetings of creditors because they were either not informed of the meetings or informed they did not have to attend. (Id. at 5, ¶ 17-18.) Further, the debtors never saw or signed the May 9, 2013 amended schedules before they were filed. (Id. at 6, ¶ 22.)

On July 16, 2013, the trustee filed the following three motions: (1) an objection to the debtors' claims of exemption in the catering truck, Hummer, and 2012 tax refund (Docket No. 52); (2) a corresponding motion for turnover (Docket No. 48); and (3) a motion to determine excessive payment to Mr. Gillis for doing poor work (Docket No 43). The court sustained the objection to

claim of exemption on September 23, 2013 on the basis that the exemptions claimed were in excess of the allowable dollar amounts. (Docket No. 83.) The remaining two motions were scheduled for hearing on November 5, 2013.

The debtors retained Scott Coben to replace Mr. Gillis as attorney of record on October 28, 2013. (Docket No. 95.) Two days later, the debtors filed amended schedules B and C. (Docket No. 97). The amended schedule B (1) listed the value of the business at $0 (its resale value); (2) listed the exact amount of the tax refund at $6,526; (3) listed the value of the catering truck at $12,000 (reduced from $19,500); and (4) listed the value of the Hummer, which was subject to a purchase security interest, at $13,875. (Docket No. 97.) The debtors contend they had originally overvalued the catering truck by listing its value as the price the debtors had paid to purchase the truck six years prior to their bankruptcy filing. (Martinez Test. at 7, ¶ 29.)

The corresponding amended schedule C applied exemptions to the assets using various provisions under California's section 703.140(b) exemption scheme. Specifically, (1) the tax refund was exempted under the wildcard provision; (2) the catering truck was exempted under the wildcard and tools-of-the-trade provisions; and (3) the Hummer was exempted under the wildcard and automobile provisions.

On the morning of the November 5, 2013 hearings on the motion for turnover and motion for excessive payment to counsel, the trustee advised Mr. Coben that the value of the Hummer had

- 5 -

Case 13-02293   Filed 12/15/16   Doc 43

claim of exemption on September 23, 2013 on the basis that the exemptions claimed were in excess of the allowable dollar amounts. (Docket No. 83.) The remaining two motions were scheduled for hearing on November 5, 2013.

The debtors retained Scott Coben to replace Mr. Gillis as attorney of record on October 28, 2013. (Docket No. 95.) Two days later, the debtors filed amended schedules B and C. (Docket No. 97). The amended schedule B (1) listed the value of the business at $0 (its resale value); (2) listed the exact amount of the tax refund at $6,526; (3) listed the value of the catering truck at $12,000 (reduced from $19,500); and (4) listed the value of the Hummer, which was subject to a purchase security interest, at $13,875. (Docket No. 97.) The debtors contend they had originally overvalued the catering truck by listing its value as the price the debtors had paid to purchase the truck six years prior to their bankruptcy filing. (Martinez Test. at 7, ¶ 29.)

The corresponding amended schedule C applied exemptions to the assets using various provisions under California's section 703.140(b) exemption scheme. Specifically, (1) the tax refund was exempted under the wildcard provision; (2) the catering truck was exempted under the wildcard and tools-of-the-trade provisions; and (3) the Hummer was exempted under the wildcard and automobile provisions.

On the morning of the November 5, 2013 hearings on the motion for turnover and motion for excessive payment to counsel, the trustee advised Mr. Coben that the value of the Hummer had

- 5 -

increased since the debtors had made payments on the loan secured by the Hummer and that the trustee would request turnover due to nonexempt equity. (Defs' Trial Br., Case No. 13-02293, Adv. Docket No. 33 at 9-10.) The debtors filed an amended schedule C that same day to exempt all equity in the Hummer. (Docket No. 99.)

The debtors have not amended their schedules since November 5, 2013. The aggregate dollar amount of wildcard exemptions claimed on the November 5 amended schedules equates to the statutory limit of $25,340 allowed under California Code of Civil Procedure section 703.140(b)(5) as of the petition date. (Id.)

The court granted the trustee's motion to determine excessive payment to debtors' counsel. The motion claimed that Mr. Gillis (a) failed to schedule certain assets; (b) provided inaccurate information regarding the loan balance on the Hummer; (c) failed to turn over pay advices for the 60 days before the filing; (d) failed to provide information regarding two vehicles; (e) failed to provide bank statements; (f) failed to accurately schedule a tax refund; (g) changed exemptions after abandonment; and (h) was unprepared for meetings of creditors. (Docket No. 43.) The court determined that Mr. Gillis essentially provided services of a petition preparer and ordered Mr. Gillis to disgorge fees in the amount of $1,575.00 to the trustee on behalf of the estate. (Docket No. 103.)

The court continued the motion for turnover several times. (Docket Nos. 98, 114.) The court suggested both attorneys review

the Law v. Siegel case pending before the Supreme Court and warned that the court may wait until the Supreme Court issues a decision before deciding on any requests for surcharging exemptions.

In response to the debtors' November 5, 2013 amended schedules, the trustee filed another objection to the debtors' wildcard exemptions applied to the Hummer and 2012 tax refund on the basis of bad faith. (Docket No. 115.) This objection and the continued motion for turnover (Docket No. 48) were consolidated and set to be tried with the trustee's adversary complaint objecting to discharge of the debtors pursuant to 11 U.S.C. section 727(c), (d), and (e) (Adv. Docket No. 1). The complaint seeks denial of discharge based on unjust (1) failure to turn over the Hummer and tax return to the trustee; and (2) failure to produce required documents and properly disclose assets. (Adv. Docket No. 1.)

On July 8, 2014, the court held a one-day trial primarily litigating questions of law regarding the objection to exemption. At the conclusion of the trial, the court and the parties agreed to put litigation of the discharge objection on the "back burner" until after the court ruled on the exemption issue. (Trial Tr., Adv. Docket No. 41 at 58.)

**II. DISCUSSION**

A. <u>Disallowing a State-Created Exemption in the Ninth Circuit After *Law. v. Siegel*</u>

The Bankruptcy Code authorizes a debtor to exempt certain assets. 11 U.S.C. § 522(b).

California residents filing for bankruptcy must choose from two sets of exemption options under state law. See 11 U.S.C. § 522(b)(1); Cal. Civ. P. Code § 703.130; In re Steward, 227 B.R. 895, 898 (9th Cir. BAP 1998). "One set of exemptions are state law non-bankruptcy exemptions, including a homestead exemption," and the "other set of exemptions is modeled closely upon the federal exemptions listed in § 522(d)." In re Steward, 227 B.R. at 898. A debtor may choose only one set of exemptions. Id.; see Cal. Civ. P. Code § 703.140(a). Under the Bankruptcy Code and California law, exemptions are to be construed liberally in favor of the debtor. In re Arrol, 207 B.R. 662, 665 (Bankr. N.D. Cal.1997).

Federal Bankruptcy Rule 1009(a) provides that a "schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed," and the Ninth Circuit has applied this right to the claim of exemptions. See In re Michael, 163 F.3d 526, 529 (9th Cir.1998); see also In re Nicholson, 435 B.R. 622, 630 (9th Cir. BAP 2010).

Prior to the recent Supreme Court case <u>Law v. Siegel</u>, bankruptcy courts routinely used their discretion under 11 U.S.C. section 105(a) to deny exemptions based on bad faith or

prejudice. 134 S.Ct. 1188 (2004). Law held that "when a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." Id. at 1196-97. The Supreme Court emphasized that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code," and that any basis for denial of a state law exemption must arise under state law. Id. at 1197-98.

A growing number of cases have held that bankruptcy courts lack the authority to disallow a debtor's claimed state-created exemption based on section 105(a), whether indirectly by denying leave to amend or directly by disallowing the exemption, because doing so would be irreconcilable with Law v. Siegel. See, e.g., In re Elliott, 523 B.R. 188 (9th Cir. BAP 2014); In re Lua, 529 B.R. 766 (Bankr. C.D. Cal.), aff'd, 551 B.R. 448 (C.D. Cal. 2015).

Here, the trustee's objection initially argued that the debtors' amended wildcard exemption should be disallowed under section 105(a), based on the debtors' bad faith. The court disagrees and interprets Law v. Siegel as a clear mandate that this court lacks the authority to disallow a claim of exemption based on section 105(a).

Without identifying a specific legal principle, the trustee's trial brief proposed that a basis independent of section 105(a) bars the debtors' from amending their wildcard exemption:

- 9 -

> Even if <u>Law</u> is read broadly to preclude exemption objections on bad faith grounds and other judge-made exceptions to the exemption scheme, <u>Law</u> is not implicated in this case because this case stands independent of bad faith. This case is about the Debtors trying to exceed the statutory limits of the Wild Card exemption. The Debtors are attempting to re-use the Wild Card exemption after already using it and benefitting from it to obtain abandonment of assets after the Court, the Trustee, and other interested parties relied upon the same.

(Pl's Trial Br., Adv. Docket No. 38 at 9.)

The trustee appears to argue the debtors should be equitably estopped from amending the wildcard exemption applied to the catering truck after the debtors had successfully obtained abandonment of the truck. The court disagrees with the trustee's assertion that <u>Law v. Siegel</u> does not extend to this situation. As the Supreme Court and the Ninth Circuit Bankruptcy Appellate Panel have instructed, this court will turn to California state law to determine whether the debtors' amended wildcard exemption may be disallowed based on the equitable doctrine asserted by the trustee.

B. <u>Disallowance of Exemption Based on California Law</u>

California courts have long recognized that the doctrine of equitable estoppel applies to state-created bankruptcy exemptions. <u>See, e.g.</u>, <u>In re Steward</u>, 227 B.R. 895, 899 (9th Cir. BAP 1998) (applying estoppel principles to homestead exemption and concluding homeowner was not estopped from claiming homestead exemption); <u>In re Lua</u>, 551 B.R. 448, 453 (C.D. Cal. 2015) (denying homestead exemption on grounds of estoppel under California law); <u>Jefferson v. Tom</u>, 52 Cal.App.2d 432, 436-37

(1942) (denying homestead exemption on grounds of estoppel and laches).

To invoke equitable estoppel under California law, a party must show: "(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." Simmons v. Ghaderi, 44 Cal.4th 570, 584 (2008). The party asserting the existence of an estoppel under California law has the burden of establishing all the elements thereof by a preponderance of the evidence. See, e.g., Guatay Christian Fellowship v. Cty. of San Diego, 670 F.3d 957, 972 (9th Cir. 2011); State Comp. Ins. Fund v. Workers' Comp. Appeals Bd., 40 Cal.3d 5, 16 (1985); see also, DeYoung v. Del Mar Thoroughbred Club, 159 Cal.App.3d 858, 862 (1984).

For purposes of applying the factors of equitable estoppel to the instant case, the court assumes a debtor may amend an exemption claimed on property that has been abandoned by the estate.

*1. Representation or Concealment of Material Fact*

The party against whom equitable estoppel is sought must have represented or concealed a material fact. Young v. Horizon West, Inc., 220 Cal.App.4th 1122, 1131-32 (2013). Here, the debtor made a written statement, under penalty of perjury, that he sought abandonment of the catering truck on the basis that its

- 11 -

scheduled value of $19,500 was claimed exempt under California's section 703.140(b)(5) "wildcard" provision. (Decl. of Jose Martinez, Docket No. 13.) The debtors filed subsequent amended schedules that reduced the dollar amount of the wildcard exemption applied to the catering truck and reduced the listed value of the debtors' interest in the catering truck. The dollar amount of the wildcard exemption necessary to exempt the catering truck is material--given the amount inversely correlates to the amount of nonexempt equity that can be realized in other assets for the benefit of the estate. This element of equitable estoppel is therefore satisfied.

### 2. Made with Knowledge of the Facts

The party against whom estoppel is sought must also have had knowledge of the facts, although "ignorance or mistake will not prevent an estoppel" when a party makes an affirmative statement of facts rather than remains silent. Cty. of Long Beach v. Mansell, 3 Cal.3d 462, 491 (1970). There is no indication that the debtors were aware of their right to claim the catering truck exempt as a "tool of the trade" under California exemption law at any time prior to the March 26, 2013 abandonment order. The debtors first applied the tools-of-the-trade exemption in the May 9, 2013 amended schedules. The debtors testified that they had not seen or signed the May 9 amended schedules nor any prior amended schedules and did not become aware of the application of the tools-of-the-trade exemption until after reviewing the docket

with their current counsel of record. (Martinez Test. at 6 ¶ 22.)

California's "tools-of-the-trade" exemption allows a debtor to exempt up to "($7,175) in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor." Cal. Civ. P. Code § 703.140(b)(6). While noting that, "California cases purporting to interpret the scope of the tools-of-the-trade exemption are few and far between," several courts have held that a vehicle qualifies as a "tool of the trade" under California exemption law if it is "necessary" to the debtor's trade, business, or profession. In re Lopez, No. 2:14-BK-12175-BB, 2015 WL 5309580, at *4 (B.A.P. 9th Cir. Sept. 3, 2015).

It is undisputed that the debtors operated their sole proprietorship out of the catering truck. (Trustee Decl., Docket No. 115 at 2, ¶ 3.) It is therefore self-evident that the catering truck was "necessary" to the business and qualified as a "tool of the trade" under California exemption law. Further, the Ninth Circuit has held that the mere fact that a chapter 7 debtor exempts an interest in motor vehicle under the California's "wildcard" statute does not prevent a later characterization of the vehicle as a "tool of the trade." In re Garcia, 451 B.R. 909, 916-17 (C.D. Cal. 2011), aff'd, 709 F.3d 861 (9th Cir. 2013).

In contrast to the wildcard exemption, which can be applied to any property, the tools-of-the-trade exemption is narrow in scope. It defies reason to assume a debtor would knowingly elect

- 13 -

to use the majority of the wildcard dollar amount to exempt an asset that could be exempted under a narrower statutory category. The court concludes the "knowledge of the facts" element is not satisfied.

### 3. To a Party Ignorant of the Truth

To successfully invoke equitable estoppel against the debtor, the trustee must also demonstrate that it was "ignorant, actually and permissibly, of the truth." Simmons, 44 Cal.4th at 584. At the time the debtor moved to compel abandonment of the catering truck claimed exempt under the wildcard provision, the trustee had no reason to be aware that the debtor would later amend the claimed wildcard exemption. The trustee did not oppose the abandonment motion and diligently pursued the debtor's interest in nonexempt property. This element is therefore satisfied.

### 4. With the Intention That the Party Act on It

Equitable estoppel requires a finding of intent. Mansell, 3 Cal.3d at 491. After the catering truck was claimed exempt and authorized abandoned, only $5,340 of the wildcard dollar amount was available to exempt remaining assets. With this knowledge, the trustee pursued assets with equity in excess of the remaining wildcard dollar amount. It is reasonable to assume that the debtors intended the trustee to act on their representation that only $5,340 remained under the wildcard exemption. Nevertheless, it cannot be deduced that the debtors moved to compel abandonment

of the catering truck with the intent that the trustee would pursue the Hummer and tax refund.

The debtors filed the abandonment motion shortly after filing their bankruptcy petition. They did so in reaction to the trustee's ultimatum to either abandon or terminate their business. Considering the catering truck and business were critical to the debtors' livelihood, the debtors' decision to pursue abandonment was likely made hastily and without much reflection or foresight. The debtors' statement of intention filed with their initial petition indicates their intent to retain the Hummer. (Docket 1.) Additionally, the debtors did not remain silent when the trustee pursued the Hummer and tax refund. The debtors repeatedly claimed the Hummer and tax refund exempt and opposed their turnover. The court concludes the element of intent is not satisfied.

### 5. *That Party Was Induced to Act on It*

The element of reliance requires that the party asserting equitable estoppel change her position in reliance on something said or done by the other party, resulting in detriment or prejudice to the party asserting equitable estoppel. State Comp. Ins. Fund, 40 Cal.3d at 16. It is undeniable that the trustee changed his position in reliance upon the abandonment order. The trustee--relying on the debtors' representation that a majority of the wildcard dollar amount had been applied to the catering truck--sought turnover of the Hummer and tax refund in an effort to compensate creditors.

The trustee contends the debtors gained a "windfall" to the detriment of creditors by reducing the wildcard dollar amount used to exempt the catering truck after its abandonment and then using the resulting wildcard balance to exempt the Hummer and tax refund. Framed differently, the trustee posits that the debtors are "trying to exceed" the maximum dollar amount of the wildcard exemption. (Pl's Trial Br., Adv. Docket No. 38 at 9.)

Under California's section 703.140(b) exemption framework, a debtor is allowed to exempt certain types of assets up to a designated dollar amount. In pertinent part, a debtor may exempt: (1) $4,800 in one or more motor vehicles; (2) $7,175 in tools of the trade of the debtor; and (3) $25,340 in any property. Cal. Civ. P. Code § 703.140(b)(2), (b)(5), (b)(6). In their final amended schedule C, the debtors properly applied the aforementioned dollar amounts to exempt the Hummer, tax refund, and catering truck. (Docket No. 99.) Had the final amended schedule C been filed with the debtor's original petition, or had the catering truck not been abandoned, it would be undisputable that the debtors had properly exercised their right to claim the exemptions afforded to them under the section 703.140(b) exemption scheme.

Factoring in the abandonment order, there are two scenarios in which the wildcard amendment would result in a windfall to the debtors to the detriment of creditors: (1) if the debtors reduced the dollar amount of the wildcard exemption applied to the catering truck without substituting an alternate claim of exemption in its place; or (2) if the debtors reduced the

- 16 -

scheduled value of the catering truck to less than its liquidation value and reduced the corresponding exemption amount. In both scenarios, the abandonment order would preclude the estate from realizing nonexempt equity in the catering truck. The facts of this case do no present either scenario. The debtors substituted the reduced wildcard dollar amount applied to the catering truck with the tools-of-the-trade exemption, and the $12,000 valuation of the catering truck credibly reflects the asset's depreciation over six years. Notably, the trustee has never disputed the $12,000 valuation. (See, e.g., Trial Tr., Docket No. 41 at 45.)

The California Supreme Court has held that equitable estoppel "rests firmly upon a foundation of conscience and fair dealing." Mansell, 3 Cal.3d at 491. Here, it appears the debtors, although significantly hindered by the incompetence of their former counsel, dealt fairly with trustee to the best of their ability. There is no indication that the debtors knowingly declined to apply the tools-of-the-trade exemption to the catering truck. There is no indication that the debtors would have sought abandonment of the catering truck but for the trustee's ultimatum. There is no indication that the debtors intended for the trustee to pursue the Hummer and tax refund. There is no indication that the debtors sought to claim exemptions in excess of the statutory limits. And, there is no indication that the debtors reduced the value of the catering tuck to one below its actual value. In conclusion, the court is satisfied that the debtors have engaged in the bankruptcy process

with conscience and fair dealing.

For the reasons set forth above, the court finds that the trustee has not met his burden of establishing that debtors' amended wildcard should be disallowed based on California equitable estoppel.

### C. Turnover of Exempt Assets

The trustee seeks turnover of the Hummer notwithstanding the debtors' claim of exemption in the amount $13,875. The trustee must prove by a preponderance of the evidence that the bankruptcy estate is entitled to a turnover. In re Jacobson, 676 F.3d 1193, 1201 (9th Cir. 2012). A debtor is not required to turn over property that is of "inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

The trustee has provided the following evidence to establish that the Hummer is of "consequential value" to the estate:

> The Debtors have advised [the trustee] that the Hummer is in good condition, has been driven about 120,000 miles, and as of May 19, 2013 had a Kelly Blue Book private party value of $17,500. In [the trustee's] opinion, based on consultation with auctioneer Dennis West, the Hummer would sell at auction for between $12,000 and $15,000, with selling costs ranging from $1,500 to $2,000, netting a range of $10,500 to $13,000.

(Trustee Decl., Docket 48 at 2, ¶ 5.)

At the time of writing this decision, a 2004 Hummer H2 in good condition has a Kelly Blue Book private party value of $13,099. Based upon the formula set forth in the turnover motion, the court finds no possibility for the estate to realize equity in the Hummer in excess of the allowed exemption in the

amount of $13,875.  Accordingly, the trustee has not met his evidentiary burden to prove that the Hummer is of "consequential value" to the estate.  The Hummer is therefore not subject to turnover.

### D. Denial of Discharge

The trustee filed a complaint objecting to discharge of the debtors pursuant to 11 U.S.C. section 727(c), (d), and (e).  In light of the foregoing decision, the trustee is ordered to file a statement as to whether the trustee wishes to proceed with the discharge objection.

### III. CONCLUSION

For the foregoing reasons, the Objection to Claim of Exemption is OVERRULED and the Motion for Turnover is DENIED.

Dated:  December 15, 2016.

_____
DAVID E. RUSSELL
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

J. Michael Hopper
PO Box 73826
Davis, CA 95617


J. Luke Hendrix
1830 15th Street
Sacramento, CA 95811


Jose Martinez
3 San Rogue Court
Sacramento, CA 95823


Ana Granados
3 San Rogue Court
Sacramento, CA 95823


Scott A. Coben
5221 Starkes Grade Road
Sacramento, CA 95726


AmeriCredit Financial Services, Inc.
PO BOX 183853
Arlington, TX 76096


Atlas Acquisitions LLC
Attn: Avi Schild
294 Union Street
Hackensack, NJ 07601


Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: 12-16-16

*Janice Bradshaw*
DEPUTY CLERK